UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ROBERT GREINER,

       Plaintiff,

       v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

       Defendant.

Civil No. 05-1689-HA

OPINION AND ORDER

_____

HAGGERTY, Chief Judge:

Plaintiff Robert Greiner brings this action for judicial review of a final decision from

defendant Commissioner denying plaintiff's application for disability insurance benefits (DIB).

Plaintiff applied for DIB on October 14, 2003. This application was denied initially and upon

reconsideration. An Administrative Law Judge (ALJ) conducted a hearing on March 2, 2005.

_____

[1] On February 12, 2007, Michael J. Astrue became Commissioner of Social Security and
he should be substituted in these proceedings as such. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25
(d)(1).

1- OPINION AND ORDER

On April 14, 2005, the ALJ issued a decision finding that plaintiff is not entitled to benefits. This decision became the Commissioner's final decision upon the Appeals Council's denial of review. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210. Plaintiff seeks judicial review of this decision.

**STANDARDS**

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to a second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If the claimant's impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe they are presumed to preclude SGA. 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of

2- OPINION AND ORDER

Impairments"). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in the fifth step, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant must be deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

3- OPINION AND ORDER

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).  The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  *Tackett*, 180 F.3d at 1098 (quotation and citation omitted).  The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome.  *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision.  *Reddick*, 157 F.3d at 720-21.

## SUMMARY OF THE ALJ'S FINDINGS

At Step One of the five-step analysis used by the Commissioner, the ALJ found that plaintiff has not engaged in SGA since the alleged onset of his disability.   Transcript of Record (hereinafter "Tr.") 15.

4- OPINION AND ORDER

At Step Two, the ALJ found that plaintiff had severe impairments, including cervical spondylosis, mild median neuropathy, and ulnar and sensory neuropathay at the wrist. Tr. 16.

At Step Three, the ALJ found that plaintiff's impairments, individually and in combination, did not meet or equal the requirements of a listed impairment. Tr. 16.

At Step Four, the ALJ found that plaintiff is unable to perform his past relevant work. Tr. 18. The ALJ so found after determining that plaintiff's RFC allows him to lift 50 pounds occasionally and 25 pounds frequently, stand and walk at least six hours out of an eight hour day, and sit at least six hours during an eight hour day. Tr. 18.

At Step Five, the ALJ found that plaintiff could perform the full range of medium work, as well as sedentary or light work. Tr. 19.

## FACTS

The relevant background has been presented thoroughly by the parties and in the ALJ's decision, and is summarized here. Plaintiff was sixty-three years old at the time the ALJ rendered a decision. He alleged that his disability began on June 11, 2002, due to injuries from a motor vehicle accident. At the hearing, plaintiff also alleged disability due to vision and learning difficulties. Specific medical facts and background will be addressed as necessary in conjunction with the parties' remaining legal arguments.

## DISCUSSION

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for payment of benefits because: the ALJ (1) improperly concluded in its Step Three analysis that plaintiff is not disabled, and (2) erroneously found in its Step Five inquiry that

5- OPINION AND ORDER

plaintiff retains the RFC to perform work that exists in significant numbers in the national economy.

**1.    ALJ's Step Three Analysis**

Plaintiff alleges that the ALJ improperly ignored evidence that plaintiff's condition may meet Listing 12.05C. That listing requires: "A valid verbal, performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitation of function[.]" 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C (1990). Plaintiff contends that his childhood IQ score of 62, coupled with his years of "simple and unskilled" labor, obligated the ALJ to inquire into Listing 12.05C by ordering additional testing.

This court finds that the ALJ's decision not to order testing was supported by substantial evidence in the record. A childhood IQ score certainly does not present the type of evidence that would obligate the ALJ to inquire into this matter. Plaintiff presents no law to support this contention and this court finds none. Moreover, plaintiff has a long and continuous work history that is entirely void of any indication that he suffered mental impairments. He also completed the Eleventh Grade and never attended any special education courses. Tr. 65. Plaintiff's contention that his purported inability to read warranted an IQ test is unfounded because the ALJ discredited that testimony. Tr. 17. As further described below, this court will not disturb the ALJ's determination. Therefore, the ALJ's decision not to test plaintiff's IQ for purposes of meeting the condition in Listing 12.05C was supported by substantial evidence.

**2.    ALJ's Step Five Analysis**

Plaintiff asserts that in completing its Step Five analysis, the ALJ improperly ignored or discredited evidence presented by plaintiff, lay witnesses, plaintiff's treating physician Dr. John

Kafrouni, and state agency consultants. Plaintiff contends that this error resulted in the erroneous

conclusion that plaintiff retains the RFC to perform a variety of work that exists in large numbers

in the national economy.

### A. Plaintiff's Testimony

Plaintiff asserts that the ALJ erred in evaluating his testimony. If an ALJ finds that a

claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility

determination citing the reasons why that testimony is unpersuasive. *See Bunnell v. Sullivan*, 947

F.2d 341, 345 (9th Cir. 1991). The ALJ must identify specifically what testimony is credible and

what testimony undermines the claimant's complaints. *See Lester v. Chater*, 81 F.3d 821, 834

(9th Cir. 1995) (citation omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In evaluating a claim of subjective symptom testimony, the ALJ must determine whether

the claimant has produced objective medical evidence of an underlying impairment which could

reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen v.*

*Chater*, 80 F.3d 1273,1281-82 (9th Cir. 1996) (citation and quotation omitted). The ALJ may

consider medical evidence as a relevant factor in determining a claimant's credibility. *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen* (reaffirmed in *Bunnell*) to

assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony. *See* 799

F.2d 1403 (9th Cir. 1986). If the claimant produces evidence that meets the *Cotton* test, and

there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the

severity of symptoms only after offering specific, clear and convincing reasons for doing so. *See*

*Dodrill*, 12 F.3d at 918.

7- OPINION AND ORDER

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms must meet two tests. First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)); *see also Cotton*, 799 F.2d at 1407. Second, he or she must show that the impairment or combination of impairments could reasonably be expected to (not necessarily that it did) produce some degree of symptom. This means that the claimant need not produce objective medical evidence of the *symptom*, or the severity thereof:

> Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon. Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. This approach reflects the highly subjective and idiosyncratic nature of pain and other such symptoms. . . . Thus, the ALJ may not reject subjective symptom testimony under the *Cotton* analysis simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged.

*Smolen*, 80 F.3d at 1282 (emphasis added) (citations and footnote omitted).

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Id.* at 1284; 20 C.F.R. § 404.1529(c)(3).

8- OPINION AND ORDER

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citation omitted). In determining that subjective testimony is not credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id.* (citations and footnote omitted).

In sum, if the plaintiff has met the burden of showing that his or her impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of the symptoms plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of plaintiff's symptoms unless there are clear and convincing reasons for doing so. *Id.* at 1283; *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

In this case, the ALJ referred to clear and convincing evidence in the record to support its partial rejection of plaintiff's testimony about his limitations. The ALJ examined the relevant medical reports extensively before concluding that plaintiff's testimony regarding the impact of his impairments was only partially supported by the medical evidence. The ALJ acknowledged that plaintiff's conditions include cervical spondylosis, mild median neuropathy, and ulnar and sensory neuropathy at the wrist. Tr. 16. The ALJ included these factors in deciding to restrict plaintiff to medium or sedentary work. Tr. 19.

The ALJ properly concluded that plaintiff's subjective testimony regarding his symptoms was only partially credible. Tr. 18. The ALJ found that some of plaintiff's alleged symptoms and

9- OPINION AND ORDER

their intensity, persistence, and limiting effects are unsupported by objective medical findings or other corroborating evidence. Tr. 28. For example, the ALJ noted that, contrary to plaintiff's testimony, plaintiff indicated previously in the disability report that he could read and write. Tr. 18.

An ALJ may also consider a claimant's activities of daily living when assessing his or her credibility. *See Thomas*, 278 F.3d at 958-59. Here, the ALJ reasonably found that plaintiff's daily activities, which include working on his truck and in his shop, placing fence posts, caring for horses, fixing the house and working in the yard, are not consistent with his allegations of debilitating pain and hand numbness. Tr. 17. Furthermore, the ALJ found that plaintiff's use of Advil in lieu of his prescription medication was not consistent with his allegations of pain as an "eight" or "nine" on a scale of one to ten. Tr. 17. Based on these factors, the ALJ satisfied its obligation to provide clear and convincing reasons for rejecting plaintiff's testimony.

**B. Lay Witness Testimony**

Plaintiff contends that the ALJ should not have rejected certain lay witness testimony because that testimony was consistent with plaintiff's complaints and the medical record. As the Ninth Circuit has noted:

> An eyewitness can often tell whether someone is suffering or merely malingering. While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight. If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.

*Dodrill,* 12 F.3d at 919.

The testimony at issue here involves that of plaintiff's wife and two of plaintiff's friends. Plaintiff's wife testified that plaintiff cannot read, tires easily, needs to take breaks and naps

10- OPINION AND ORDER

during the day, and works slower than in the past. Tr. 367-68, 371. Plaintiff's friends testified

that plaintiff cannot read. Tr. 181, 297, 300.

The ALJ provided adequate reasons to discount the testimony of these lay witnesses.

Specifically, the ALJ found that the testimony of these witnesses was inconsistent with the

treatment record. Tr. 17. No physician has described difficulties in walking and the plaintiff

does not require ongoing treatment for pain. Tr. 17. Plaintiff also maintains a farm, feeds

horses, performs car repairs, and lifts bales of hay on a daily basis. Tr. 17-18. Furthermore, any

evidence proffered in support of plaintiff's alleged illiteracy is directly contradicted by plaintiff's

own admission. Tr. 58. The reasons provided by the ALJ were germane to each witness and

shall not be disturbed.

### C. Medical Opinions

Plaintiff asserts that the ALJ erred by (1) rejecting Dr. Kafrouni's opinion that plaintiff

may only work four hour days, (2) relying on Dr. Kafrouni's weight restrictions to justify findings

that plaintiff can work full-time, and (3) ignoring the non-exertional impairments described by

state agency consultants. However, this court concludes that the ALJ did not err in weighing the

opinions of Dr. Kafrouni and the state agency consultants.

While clear and convincing reasons are required to reject an examining physician's

uncontradicted opinion, the ALJ need only provide specific and legitimate reasons, supported by

substantial evidence, to reject an examining physician's opinion that is contradicted by another

physician. *Andrews*, 53 F.3d at 1041. The ALJ may properly disregard a medical opinion, even

the opinion of an examining source, which is based on the self-reporting of a properly discredited

claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

11- OPINION AND ORDER

The ALJ noted that Dr. Kafrouni determined in April 2003 that plaintiff could lift a maximum of 100 pounds, 80 pounds occasionally, and 40 pounds frequently. Tr. 18, 238-39. The ALJ gave significant weight to this opinion because it was consistent with the treatment record and plaintiff's activities. Tr. 18. However, the ALJ found no basis for Dr. Kafrouni's July 2003 opinion that plaintiff was disabled from his previous employment and should be restricted to sedentary work. Tr. 18. The ALJ reasoned that because exam findings had not changed between the two opinions and plaintiff reported no changes in his symptoms during that time, Dr. Kafrouni's July 2003 opinion should be given little weight. Tr. 18. This court finds the that the ALJ's explanation was specific, legitimate, and supported by substantial evidence.

Plaintiff next alleges that the ALJ erred by failing to incorporate a portion of the state agency consultants' findings into its RFC assessment. Plaintiff contends that if the ALJ had properly incorporated these findings, including plaintiff's non-exertional impairments, he should not have applied the Medical-Vocational Guidelines at Step Five of the sequential evaluation.

The ALJ adopted the state agency consultants' finding that plaintiff can occasionally climb and crawl. Tr. 18. Indeed, "[a] non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacities in ways not contemplated by the guidelines. In such a case the guidelines would be inapplicable." *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993) (citation omitted). Here, however, there is no indication that a slight limit on one's ability to climb and crawl is sufficiently severe to significantly limit plaintiff's ability to perform medium or sedentary work. Therefore, the ALJ did not err by utilizing the Medical-Vocational Guidelines.

The ALJ rejected the state agency consultants' finding that plaintiff cannot frequently reach above shoulder level. Tr. 18. Specifically, the ALJ determined that this finding was inconsistent with the April 2003 opinion of Dr. Kafrouni that plaintiff is able to lift 50 pounds overhead. Tr. 18. The ALJ concluded that plaintiff has no limitations in overhead lifting beyond the limitations of medium exertion work. Tr. 18. This court finds that the ALJ's conclusion was based on substantial evidence from the record and shall not be disturbed.

## CONCLUSION

Based on the foregoing, the findings of the Commissioner are based upon the correct legal standards and are supported by substantial evidence in the record. The final decision of the Commissioner denying plaintiff Robert Greiner's application for benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this 26 day of July, 2007.


ANCER L. HAGGERTY
United States District Judge

13- OPINION AND ORDER